## NATIONAL LABOR RELATIONS BOARD
v.
## INTERNATIONAL FURNITURE CO.
### No. 14817.

United States Court of Appeals,
Fifth Circuit.
April 30, 1954.

William J. Avrutis, Atty., N. L. R. B., A. Norman Somers, Asst. Gen. Counsel, David P. Findling, Assoc. Gen. Counsel, George J. Bott, General Counsel, Frederick U. Reel, Washington, D. C., Attys., N. L. R. B., for petitioner.

Hoke Smith, Atlanta, Ga., Herbert B. Kimzey, Cornelia, Ga., Welborn B. Cody, Atlanta, Ga., for respondent.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

HOLMES, Circuit Judge.

This is a petition to enforce an order of the National Labor Relations Board requiring the International Furniture Company to bargain collectively with Upholsterers' International Union of North America, Local 188, an affiliate of the A. F. of L. After the union had won an election held by the employees of respondent at the latter's plant in Cornelia, Georgia, the board on December 14, 1950, certified the union as the bargaining agent of said employees. Thereafter, respondent and the union entered into a series of conferences for the purpose of negotiating a contract, and meetings were held on twenty-four different days between January 3 and September 6, 1951.

At the first meeting the union submitted a proposed contract, which the respondent rejected, stating that it could not afford to meet the demands of the union for wage increases and seven holidays with pay. On January 25, 1951, the respondent made several counter-proposals, including a clause with regard to the rights of management, one setting forth a procedure for grievances and arbitration, and a third that would prohibit strikes. On May 24, 1951, respondent submitted another counter-proposal, in which it agreed to withdraw its demand for no-strike and rights-of-management clauses in the contract. The union agreed to sign a contract embracing the proposals made by respondent, but the latter refused to do so, stating that it would not sign until the union had obtained the signature of its home office in Philadelphia. Despite the concessions made by the union, respondent refused to sign a contract, and further conferences followed. By the end of a session held on July 31, 1951, the parties had reached a tentative agreement upon all of respondent's counter-proposals except as to clauses governing arbitration procedure and the term of the contract. The union wanted a contract that would terminate one year from the date it was signed, but respondent insisted that it should expire on December 15, 1951, which would be one year after the date of certification.

On August 1, 1951, the respondent withdrew some of its own proposals, and also withdrew its agreement to some of the demands made by the union. For instance, respondent had agreed upon 60 days as the length of the probationary period of employees, but on August 1st it asked for a 90-day period; it also insisted upon the inclusion of the no-strike and rights-of-management clauses, which on May 24th it had agreed to eliminate. The respondent then insisted that the union prepare and submit an entirely new contract in accordance with the terms already agreed upon. On August 23, 1951, the union submitted a new contract containing provisions that both parties had tentatively accepted, but respondent again refused to accept the contract, rejecting even some of the proposals that it, itself, had made, and again insisting that the contract should termi-

nate on December 15, 1951. Prior to the final conference of September 5th, a representative of respondent had told the union representative that "we'll meet but nothing will be accomplished." No agreement was reached at that meeting, and on October 24, 1951, the union filed its original complaint charging respondent with a violation of Section 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (1, 5).

■ On January 11, 1952, without any notice to the union, respondent unilaterally granted to its employees a program of five paid holidays a year, and announced that they would receive retroactive pay for Thanksgiving and Christmas of 1951, and New Year's day, 1952. On March 21, 1952, the union wrote a letter to the respondent in which it requested a conference for the purpose of discussing the renewal of negotiations. Respondent agreed on a meeting to take place on March 26, 1952, but failed to appear and, instead, wrote the union a letter stating that it had doubts as to whether the union represented a majority of its employees, and suggesting that all negotiations be suspended pending the outcome of a consent election among said employees. Following the delivery of the letter to the union representative, respondent's attorney stated to him that "the union would be five years getting a contract." At this time the union insisted that it was entitled to recognition by respondent, and reaffirmed its readiness to sign a contract, but respondent refused to meet further with the union.

The respondent's reversal of position, its withdrawal of previous agreements, and its insistence upon substituting terms that had once been discarded, are indicative of lack of good faith. Moreover, the respondent, after repeatedly refusing the union's demands for wage increases and paid holidays, shortly after the anniversary date of the certification and without notice to the union, instituted a system of paid holidays and wage increases. The evidence shows that, during the entire period of negotiations, the respondent was bargaining with the union for the sole purpose of pursuing the bargaining process until the end of the union's year of certification, at which time it could challenge the continuation of the certification on the ground that the union was no longer the representative of the majority of respondent's employees.

While there is a presumption that the majority status of the union continues after the year of certification, the employer has a right to refuse recognition after the year has passed where the refusal arises from a belief in good faith that the union does not represent a majority of the employees. In view of the lack of good faith demonstrated by respondent in its negotiations with the union during the year of certification, and its unilateral grant of wage increases and holiday pay, all prior to its disclaimer of the majority status, it is apparent that the refusal to recognize the union was also wanting in good faith.

■ The respondent's refusal to bargain with the union on March 26, 1952, was violative of Section 8(a)(5), (1) of the Act, as were its unilateral grants of wage increases and holiday pay. The substantial evidence on the record considered as a whole supports the board's findings that the respondent refused to bargain with the union, and the petition for enforcement is granted. N. L. R. B. v. Whittier Mills Co., 5 Cir., 111 F.2d 474; N. L. R. B. v. Sanson Hosiery Mills, 5 Cir., 195 F.2d 350; Majure, v. N. L. R. B., 5 Cir., 198 F.2d 735; N. L. R. B. v. Harris, 5 Cir., 200 F.2d 656; N. L. R. B. v. Poultry Enterprises, Inc., 5 Cir., 207 F.2d 522.

Enforced.