**AMERICAN SEATING COMPANY OF MISSISSIPPI, Petitioner-Cross-Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent-Cross-Petitioner.**

No. 28075.

United States Court of Appeals, Fifth Circuit.

April 10, 1970.

James E. Price, Corinth, Miss., for petitioner. Stovall & Price, Corinth, Miss., of counsel.

Marcel Mallet-Prevost, Asst. General Counsel, N. L. R. B., Washington, D. C., John J. A. Reynolds, Director, 26th Region, N. L. R. B., Memphis, Tenn., Herbert Fishgold, Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Robert A. Giannasi, Atty., N. L. R. B., for respondent.

Before COLEMAN, GOLDBERG and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This is a petition to review a decision of the National Labor Relations Board (hereafter the Board) holding that the petitioner, American Seating Company of Mississippi (hereafter the Company), failed to bargain in good faith with the Union, Millmen Local Union 2604, United Brotherhood of Carpenters & Joiners of America, AFL–CIO, which was the certified bargaining representative for its employees, in violation of § 8(a) (5) and (1) of the National Labor Relations Act, 29 U.S.C. § 151 et seq. as amended (1964), (hereafter the Act), and failed to reinstate employees who struck the Company as a result of the Company's failure to bargain in good faith, in violation of § 8(a) (3) and (1) of the Act. The Board cross petitions for enforcement of its order. We deny the petition to review and enforce.

The central issue presented here is whether the Company's conduct at a bargaining session held on April 8, 1968, constituted a failure to bargain in good faith as required by § 8(d) of the Act. Resolution of the second issue, whether the Company violated § 8(a) (3) and (1) of the Act by refusing to reinstate fifteen striking employees whose positions had been filled during the strike, depends on whether the strike was an unfair labor practice strike or an economic strike, which, in turn, depends on the resolution of the first issue.

There is very little dispute as to the facts of this case. The Union was certified as bargaining representative of the Company's employees in a proper bargaining unit on October 27, 1967, and, at the Union's request, collective bargaining was entered into with the Company on November 27, 1967. Subsequent to the ninth meeting between the parties on January 16, 1968, the Union submitted the Company's latest proposal to a vote of its membership and the proposal was rejected. Included in the rejected contract proposal were provisions for increased insurance benefits, alteration of the existing arrangement as to lunch and break periods, and shift preference based on seniority. At the February 12th session, the second session held after the Union membership had rejected the Company's proposal, the Company offered no new contract proposal, but stated that it was conditioning its offer of increased insurance benefits, tentatively agreed upon at the previous bargaining session, upon the Union negotiating committee's recommending acceptance of the Company's last proposal to its membership. The Union committee refused to make such a recommendation, but submitted the Company's proposal to its membership at a special meeting on March 13th. The membership voted to accept the contract proposed by the Company, including the provision for increased insurance benefits.

On March 14th, the Union negotiators requested a meeting to sign a contract and this meeting took place on April 8th. At this meeting the Company representative submitted a draft agreement containing all of the provisions the Company had been willing to agree to at the February 12th meeting, except that the provision for increased insurance benefits was deleted. The Company representative further informed the Union committee that the Company had learned that a majority of the employees were opposed to changing the existing arrangement for lunch and break periods. The Company requested that the Union poll its members as to their preference of lunch and break periods and, when the Union representatives refused to do so, withdrew the previously agreed to lunch-break period proposal and offered only to continue the existing practice.

The Company representative also informed the Union negotiators that the shift preference provision was being withdrawn, explaining that the Company

had made a serious mistake in making this proposal because it could result in all the older and more experienced employees being on the first shift. The trial examiner, however, found that this provision of the proposed contract was withdrawn in good faith and that no inference of bad faith should be drawn from this action, and the Board has adopted this position.

The Company representative also questioned the Union negotiators' authority to sign the proposed contract in its then modified form and stated that the Company would make a firm offer of the proposed contract, if the Union would agree to submit that proposal to its members and that this was its best and final offer. The Union acquiesced and agreed to hold a Union meeting for that purpose the following day, although the Union's spokesman expressed the belief that the membership would not accept the Company's last proposal.

The Union membership voted to go out on strike after discussing the events of the April 13th bargaining session in an informal meeting held during the lunch break at the Company's plant the following day, a formal strike vote having been taken earlier in the year. The strike was terminated on April 19, 1968, when all of the striking employees made an unconditional offer to return to work. The striking employees were all reinstated, except for fifteen employees whose positions had been taken by replacements during the strike. After three more bargaining sessions, a collective bargaining contract was executed between the Company and the Union on July 24, 1968.

The Board, with one member dissenting, held that the Company had violated § 8(a) (5) and (1) of the Act by withdrawing, without good cause, provisions of a proposed contract to which it had tentatively agreed, by conditioning its continued acceptance of one provision of the proposed contract, to which it had previously agreed, upon the submission of the proposed contract to all the employees in the bargaining unit for ratification, and by continuously questioning the authority of the bargaining committee to agree to proposals it made and by seeking to control the procedure by which the Union delegated or authorized its bargaining representatives to act. The Board further found that the April 9th strike was caused in substantial part by refusing to reinstate fifteen striking employees for whom replacements had been these unfair labor practices and that by hired during the strike, the Company violated § 8(a) (3) and (1) of the Act. The Board ordered the Company to offer to each of the fifteen strikers immediate and full reinstatement to his former or substantially equivalent position and to make him whole for any loss in back pay. Since a collective bargaining agreement had been entered into between the parties, the Board did not issue an affirmative bargaining order.

It is well established that withdrawal by the employer of contract proposals, tentatively agreed to by both the employer and the union in earlier bargaining sessions, without good cause, is evidence of a lack of good faith bargaining by the employer in violation of § 8 (a) (5) of the Act, regardless of whether the proposals constituted valid offers subject to acceptance under traditional contract law. San Antonio Machine & Supply Corporation v. N. L. R. B., 5 Cir., 1966, 363 F.2d 633; National Labor Relations Board v. Shannon, 9 Cir., 1953, 208 F.2d 545, 548; National Labor Relations Bd. v. International Furn. Co., 5 Cir., 1954, 212 F.2d 431, 433. Likewise, insistence by the employer that a proposed contract be submitted to a vote of the union's membership and that it be ratified before the employer will agree to it, where objected to by the union, is sufficient basis to support a finding that the employer failed to bargain in good faith. Houchens Market of Elizabethtown, Inc. v. N. L. R. B., 6 Cir., 1967, 375 F.2d 208, 212; National Labor Relations Bd. v.

Darlington Veneer Co., 4 Cir., 1956, 236 F.2d 85, 88. Furthermore, the union does not waive its right to assert a charge against the employer for a completed refusal to bargain by acquiescing and agreeing to submit a contract to ratification in response to the employer's insistence that the proposed contract be ratified before final agreement if it constitutes the best offer the company is willing to make. See General Electric Co., Battery Prod., Cap. Dept. v. N. L. R. B., 5 Cir., 1968, 400 F.2d 713, 727, cert. den. 394 U.S. 904, 89 S.Ct. 1012, 22 L.Ed.2d 216; Henry I. Siegel Co. v. N. L. R. B., 2 Cir., 1965, 340 F.2d 309, 310. The finding of the N.L.R.B. that the Company was guilty of violating § 8(a) (5) and (1) is supported by the substantial evidence in the record, taken as a whole.

The Board's finding that the strike of April 9th was caused by the Company's refusal to bargain in good faith at the April 8th bargaining session and therefore an unfair labor practice strike is likewise supported by the substantial evidence. See General Drivers and Helpers Union, Local 662 v. N. L. R. B., 1962, 112 U.S.App.D.C. 323, 302 F.2d 908, 911, cert. den., Rice Lake Creamery Co. v. General Drivers etc., 371 U.S. 827, 83 S.Ct. 48, 9 L.Ed.2d 65, and cases cited therein. It is well established that employees engaged in an orderly unfair labor practice strike do not lose their status as employees and are entitled to reinstatement with back pay, even if replacements for them have been found. Mastro Plastics Corp. v. N. L. R. B., 350 U.S. 270, 279, 76 S.Ct. 349, 100 L.Ed. 309 (1956); Tex Tan Welhausen Company v. N. L. R. B., 5 Cir. 1969, 419 F.2d 1265, 1269. The Board was thus correct in ordering the Company to reinstate with back pay the fifteen employees for whom replacements were hired during the strike.

The Company's petition to set aside the decision of the Board is denied and the Board's order is hereby enforced.