**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**A. W. THOMPSON, INC., Respondent.**

**No. 71-1130**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Oct. 25, 1971.

Rehearing and Rehearing En Banc Denied Dec. 29, 1971.

* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

**1334**

Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., Elmer P. Davis, Director, Region 16, N. L.R.B., Fort Worth, Tex., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, John D. Burgoyne, Atty., N.L.R.B., for petitioner.

Joseph Connally, Turpin, Smith, Dyer, Harman & Osborn, Odessa, Tex., Risher M. Thornton, III, Midland, Tex., for respondent.

Jack Q. Tidwell, Deaderick, McMahon, Cox, Todd & Tidwell, Odessa, Tex., for intervenor.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

AINSWORTH, Circuit Judge:

The National Labor Relations Board, pursuant to Section 10(e) of the National Labor Relations Act, 29 U.S.C. § 151, petitions for enforcement of its order issued against A. W. Thompson, Inc. on June 30, 1970, 184 N.L.R.B. No. 14.[1] Billy J. Armstrong, an employee of Thompson, has intervened as the alleged representative of 125 of 154 employees (81%) in the bargaining unit. He supports the Company's position in full. Alternatively, he asks us to amend the Board's order so as to "guarantee to these Employees the right of a decertification election regardless of whether or not one is wanted by the Board or by the Union." The question before us is whether there is "substantial evidence on the record considered as a whole" to support the Board's findings and order. 29 U.S.C. § 160(e).

After careful consideration of the record as a whole, we find substantial evidence to support the Board's findings and therefore enforce the Board's order.

A. W. Thompson, Inc. is engaged in the business of drilling oil wells. The Union entered into a collective bargaining agreement with Thompson on November 16, 1967. The contract provided for a termination date 90 days after notice by either party. On June 3, 1968, the Union notified Thompson of its desire to amend the agreement and demanded negotiation. The Board found that by July 1, 1969, there was agreement on all terms. But Thompson refused to sign the agreement claiming that it had reservations concerning the "bumping" clause. The Union called a meeting for a strike vote but only 2 out of 154 employees attended the meeting, indicating that the Union's strength had obviously dissipated. Indeed, during the first two weeks of July, at the behest of Company President Frank L. Thompson and other supervisory personnel, 125 out of 154 employees signed petitions stating that they no longer wanted the Union to represent them. They petitioned the Board for a decertification election. The Union countered with charges of unfair labor practices against Thompson. The Board dismissed the decertification petition and scheduled hearings on the charges.

The Board found that Thompson failed to meet with the Union at reasonable intervals for the purpose of collective bargaining. The record shows that negotiation of the new agreement was protracted. Meetings between the parties were few. The Company as evidence of its good faith maintains that agreement was in fact reached on all but one item (the "bumping" clause). A collective bargaining agreement is a

---

1. The Board ordered Thompson to (1) bargain in good faith with Local 826, International Union of Operating Engineers, AFL–CIO, the sole bargaining representative of approximately 154 employees of Thompson, in the bargaining unit in question duly certified by the Board after election on August 10, 1966; (2) to post notices to employees to the effect that the Company will not interfere with the rights of the employees to select their own bargaining representative and to bargain with said representative; (3) to cease and desist from certain unfair labor practices found by the Board and from interfering with, restraining or coercing its employees in the exercise of their Section 7 rights, 29 U.S.C. § 157; and (4) to notify the Regional Director what steps have been taken.

whole composed of many parts. However, all parts must be complete. On September 10, 1968, the Company disapproved of the bumping clause in the old contract. On March 18, 1969, it suggested some "grammatical corrections" in the proposed clause. At a meeting on July 1, 1969, the parties discussed and agreed on all terms of the agreement, item by item. When the bumping clause was reached, the Company again demanded certain "grammatical corrections." The Union agreed. This was the only item of disagreement because the Union dropped all other demands. Nevertheless, Company President Thompson refused to sign the agreement and again raised the bumping clause matter, stating that he needed more time to examine it and to confer with officers of his Company about it. In the weeks following this action, the Company refused even to negotiate with the Union, unilaterally withdrawing recognition of the Union as bargaining representative of its employees.

Section 8(d) requires employers and representatives of employees "to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment * * *." We have held on numerous occasions that while the duty does not compel either side to make concessions, it does require that the parties "enter into discussion with an open and fair mind, and a sincere purpose to find a basis of agreement * * *." Globe Cotton Mills v. National Labor Relations Board, 5 Cir., 1939, 103 F.2d 91, 94. See also N.L.R.B. v. Texas Coca-Cola Bottling Company, 5 Cir., 1966, 365 F.2d 321; Majure v. National Labor Relations Board, 5 Cir., 1952, 198 F.2d 735; N.L.R.B. v. Herman Sausage Co., 5 Cir., 1960, 275 F.2d 229; National Labor Relations Board v. Whittier Mills Co., 5 Cir., 1940, 111 F.2d 474; Stonewall Cotton Mills v. National Labor Relations Board, 5 Cir., 1942, 129 F.2d 629; National Labor Relations Board v. Athens Mfg. Co., 5 Cir., 1947, 161 F.2d 8; Tex Tan Welhausen Company v. N.L.R.B., 5 Cir., 1969, 419 F.2d 1265, remanded, 397 U.S. 819, 90 S.Ct. 1516, 25 L.Ed.2d 805 (1970), modified on other grounds, 5 Cir., 1970, 434 F.2d 405. "The ultimate issue whether the Company conducted its bargaining negotiations in good faith involves a finding of motive or state of mind which can only be inferred from circumstantial evidence." National Labor Relations Bd. v. Reed & Prince Mfg. Co., 1 Cir., 1953, 205 F.2d 131, 139–140, cert. denied, 346 U.S. 887, 74 S.Ct. 139, 98 L.Ed. 391 (1953).

The Trial Examiner found that the Company "failed to display the degree of dilligence [sic] that proper performance of its bargaining obligations required." The Board agreed with the Trial Examiner and we find that there is substantial evidence to support the Board's finding.

Closely related to respondent's violation of Section 8(d) is the Board's finding that the Company had no sincere intention of reaching an agreement with the Union in violation of Section 8(a) (5) and (1) of the Act.

The Trial Examiner found, and the Board agreed, that "the Thompson demand at the July 1 meeting to review the bumping procedures after all other items had been agreed upon, and after Respondent had earlier indicated its consent to the bumping procedures, constituted a maneuver on the part of the Respondent to avoid entering into an agreement with the Union." The Examiner concluded that the Company "did not ever intend to enter into agreement with the Union." It is settled that "withdrawal by the employer of contract proposals, tentatively agreed to by both the employer and the union in earlier bargaining sessions, without good cause, is evidence of a lack of good faith bargaining by the employer in violation of § 8(a) (5) of the Act * * *." American Seating Company of Mississippi v. N.L.R.B., 5 Cir., 1970, 424 F.2d 106, 108. There is substantial evidence on the record as a whole to support the Board's finding of a violation of Section 8(a) (5).

The Board found a further violation of Section 8(a) (5) when the Company unilaterally effectuated a wage

increase. On June 20, the parties had fully agreed to increase wages by 20 cents an hour across the board. The Company wanted to put the increase into effect immediately, but the Union resisted, desiring to incorporate the increase into the final collective bargaining agreement. The Trial Examiner found that "on July 13, without consultation with the Union or a written contract the Respondent put the 20-cent across-the-board wage increase into effect." The Company defends on the ground that the Union had consented to institution of the increase. But the Board found, and we agree, that the Union's purported consent to the increase, following two separate requests to incorporate the increase into the final collective bargaining agreement, arose "only after [the Union] was convinced that the Respondents had no intention of entering into an agreement." Rather, "the Respondent's whole course of action * * * is indicative of the fact that it intended to and did place this wage increase in effect upon its own initiative," in violation of Section 8(a) (5) of the Act, see N.L. R.B. v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962); General Electric Co., Battery Prod., Capacitor Dept. v. N.L.R.B., 5 Cir., 1968, 400 F.2d 713.

■■■ Finally, the Board found violations of Section 8(a) (1) by the Company for withdrawing recognition from the Union as the sole bargaining representative of its employees. An employer may refuse to bargain with a Board-certified union only when he in good faith believes that the Union no longer represents the bargaining unit employees. N.L.R.B. v. Movie Star, Inc., 5 Cir., 1966, 361 F.2d 346, 351; Skyline Homes, Inc. v. N.L.R.B., 5 Cir., 1963, 323 F.2d 642, cert. denied, 376 U.S. 909, 84 S.Ct. 662, 11 L.Ed.2d 607 (1964). At the expiration of the old agreement, Thompson conducted a "secret" poll which showed that a majority of the Company's employees wanted the Union to continue representing them. A year later, when Thompson refused to bargain, 81% of the employees signed petitions to the effect that they no longer wanted the Union. The Company and intervenor Arm-

strong assert that the Union became weak by its own doings. The Trial Examiner found to the contrary: "* * * after the July 1 meeting, the Respondent set out on a course of conduct which, I find, was calculated to discourage adherence to the union cause. * * * Thompson engaged in talks to employees in which he placed the onus for their not receiving wage increases on the Union; in which he stated he would not sign a contract with the Union; and in which he then attempted, and evidently succeeded in many cases, to persuade the employees to sign the petitions expressing their desire to rid themselves of the Union. In addition, certain supervisors actually participated in posting the petitions and in urging employees to sign." These activities constitute a violation of Section 8(a) (1) of the Act. As we stated in N.L.R. B. v. Birmingham Publishing Company, 5 Cir., 1958, 262 F.2d 2, 7: "Section 8(a) (1) of the Act makes it unlawful for an employer to instigate and promote a decertification proceeding or induce employees to sign any other form of union-repudiating document, particularly where the solicitation is strengthened by express or implied threats of reprisal or promises of economic benefit."

In Medo Photo Supply Corp. v. National Labor Relations Board, 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007 (1944), the Supreme Court stated that a company "cannot, as justification for its refusal to bargain with the union, set up the defection of union members which it had induced by unfair labor practices, even though the result was that the union no longer had the support of a majority. It cannot thus, by its own action, disestablish the union as the bargaining representative of the employees, previously designated as such of their own free will." 321 U.S. at 687, 64 S. Ct. at 835. In Franks Bros. Co. v. National Labor Relations Board, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020 (1944), the Court recognized that issuance of a bargaining order, as opposed to ordering an election, was well within the discretion of the Board. "The Board might well think that, were it not to adopt this

type of remedy, but instead order elections upon every claim that a shift in union membership had occurred during proceedings occasioned by an employer's wrongful refusal to bargain, recalcitrant employers might be able by continued opposition to union membership indefinitely to postpone performance of their statutory obligation." 321 U.S. at 705, 64 S.Ct. at 819.

■ We have recognized that the Board, as a remedy for the Company's unfair labor practices, may impose a bargaining order on "at least two grounds: (1) the refusal to let an employer benefit by his own wrongs and (2) the insistence that a union which has won the right to bargain is allowed to enjoy that right." General Electric Co., Battery Prod., Capacitor Dept. v. N.L.R.B., 5 Cir., 1968, 400 F.2d 713, 730. See also Franks Bros. Co. v. National Labor Relations Board, *supra*, and Skyline Homes, Inc. v. N.L.R.B., 5 Cir., 1963, 323 F.2d 642, cert. denied, 376 U.S. 909, 84 S.Ct. 662, 11 L.Ed.2d 607 (1964). A bargaining order is appropriate even in the absence of proof that the Union's loss of majority was attributable to the unfair labor practices which had been perpetrated by the Company. In N.L.R.B. v. Movie Star, Inc., 5 Cir., 1966, 361 F.2d 346, we found that "[w]hile it may be that at some earlier point in time the Respondents might have validly asserted a good-faith doubt as to the Union's majority status, they did nothing to dispute that majority status until August 28, when the course of conduct found by the Board to have been violative of the Act was in high gear. The effect of Respondents' numerous Section 8(a) (1) violations was to transform a possible good-faith doubt of the Union's majority into a bad-faith virtual certainty." 361 F.2d at 351.

More recently, in J. P. Stevens & Co., Inc., Gulistan Div. v. N.L.R.B., 5 Cir., 1971, 441 F.2d 514, we recognized, as did the Trial Examiner herein, that many of the employees of the Company might not have been affected by the Company's unfair labor practices, and that many of the employees, in the exercise of their free choice would not choose the Union in any event. "But the Board's evaluation of the propriety of a bargaining order cannot be based on employee motivations, determined individual by individual. We cannot require the Board to engage in the hopeless and impossible task of evaluating the subjective reasons for each employee recantation." 441 F.2d at 527. The Trial Examiner found that "the loss of majority caused in whole or in part by Respondent's unfair labor practices does not justify its refusal to bargain and, under the circumstances, the Respondent cannot be said to have entertained a good-faith doubt as to the Union's majority status. To hold otherwise would result in permitting Respondent to profit from its own unlawful refusal to bargain."

We find substantial evidence on the record considered as a whole to support the Board's findings of Section 8(a) (1), Section 8(a) (5), and Section 8(d) violations upon which the bargaining order was predicated. The Board's choice of remedy must "be given special respect by reviewing courts." N.L.R.B. v. Gissel Packing Co., 395 U.S. 575, 612, 89 S. Ct. 1918, 1939 n. 32, 23 L.Ed.2d 547 (1969). We decline to amend the order to "inform these Employees and the Board of their right to a decertification election" as intervenor requests. The Board has made a choice between two available remedies. Its choice is amply supported by substantial evidence.

The Board's order is enforced.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.