NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

MAYWOOD PLANT OF GREDE
PLASTICS, A Division of Grede
Foundries, Inc., Respondent.

MAYWOOD PLANT OF GREDE
PLASTICS, A Division of Grede
Foundries, Inc., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

Plastic Workers Union, Local 18,
AFL–CIO, Intervenor.

Nos. 78–1667, 78–1809.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 19, 1980.
Decided June 3, 1980.

Walter S. Davis, Milwaukee, Wis., for petitioner in No. 78–1809 and respondent in No. 78–1667. Clifford B. Buelow, Milwaukee, Wis., also entered an appearance for petitioner in No. 78–1809 and respondent in No. 78–1667.

Standau E. Weinbrecht, Atty., N.L.R.B., Washington D.C., with whom John S. Irving, Gen. Counsel, and Elliott Moore, Deputy Assoc. Gen. Counsel, N.L.R.B., Washington D.C., were on the brief, for respondent in No. 78–1809 and petitioner in No. 78–1667.

Sheldon M. Charone, Chicago, Ill., also entered an appearance for intervenor in No. 78–1809.

Before WRIGHT, Chief Judge, and WILKEY and MIKVA, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

In this case, the National Labor Relations Board seeks enforcement of an order predicated on a finding that the subject company had committed certain unfair labor practices and requiring, *inter alia*, that the company bargain in good faith with the union. The company opposed enforcement on two grounds: first, that it did not commit the unfair labor practices charged; and second, that a bargaining order, though otherwise proper, is forfeited in this case by the union's own egregious misconduct during its strike of the company's plant. We conclude that the Board's findings of company violations are supported by substantial evidence on the record as a whole and that the Board's order in this case is within the range of its discretion to fashion remedies for unfair labor practices. Changed circumstances, however, require that the Board's order be modified somewhat. As is more fully explained below, the Board's Decision and Order in this case, *Maywood Plant of Grede Plastics*, 235 N.L.R.B. 363 (1978), as modified, is enforced.

## I. THE VIOLATIONS

At the time of the events that prompted this suit, Maywood Plant of Grede Plastics, a division of Grede Foundries, Inc. (Grede) owned and operated a plastics molding plant located in the Chicago suburb of Maywood. The employees of the Maywood plant were represented by the Plastics Workers Union, Local No. 18 (Union), which had entered into successive collective bargaining agreements with Grede and its corporate predecessors since 1957. In April 1974, about two months before the then-operative agreement was to expire, this dispute arose.

A. *The Decertification Campaign*

The beginning of the controversy centers on the activities of Lupe Martinez, who was then employed in the molding department of the Maywood plant. Together with three of her co-workers, Martinez began circulating a decertification petition. The filing of such petitions with the Board sets into motion a process that may result in a Board-sponsored election to determine whether the incumbent union should continue to serve as a bargaining representative for the bargaining unit employees. *See* National Labor Relations Act (NLRA or Act) § 9(c), 29 U.S.C. § 159(c) (1976). In soliciting signatures for the petition, Martinez made various statements to her co-workers promising better economic benefits if the Union were voted out. While the decertification petition was pending, she continued making such statements as well as statements threatening co-workers with the loss of their jobs for not supporting the company in its efforts to oust the Union. During this time, Martinez also questioned certain co-workers about Union meetings which they attended. There is no question that her conduct would be ample grounds for a violation of section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1) (1976), if that conduct could be attributed to her employer. *See e. g., NLRB v. Triumph Curing Center*, 571 F.2d 462, 468–71 (9th Cir. 1978); *NLRB v. Sky Wolf Sales*, 470 F.2d 827, 829–30 (9th Cir. 1972); *NLRB v. A. W. Thompson, Inc.*, 449 F.2d 1333, 1336 (5th Cir.), *cert. denied*, 405 U.S. 1065, 92 S.Ct. 1497, 31 L.Ed.2d 795 (1971); *cf. NLRB v. Pilgrim Foods, Inc.*, 591 F.2d 110, 114–16 (1st Cir. 1978).

The Board relied on two theories for attributing to Grede the legal responsibility for Martinez' conduct. First, the Board found that, on the facts of this case, Martinez was a "supervisor" within the meaning of section 2(11) of the Act, 29 U.S.C. § 152(11) (1976). Second, the Board found, on the basis of convincing circumstantial evidence, that Grede was using Martinez to engage in a calculated campaign to oust the Union from representation of the Maywood plant employees. Substantial evidence in the record as a whole supports these findings of the Board, which are legally sufficient for attributing to Grede violations of section 8(a)(1) on either of the two theories that the Board employed. *See, e. g., Jays Foods, Inc. v. NLRB*, 573 F.2d 438, 444–45 (7th Cir.), *cert. denied*, 439 U.S. 859, 99 S.Ct. 176, 58 L.Ed.2d 167 (1978); *NLRB v. Sol-*

boro *Knitting Mills, Inc.*, 572 F.2d 936, 940–41 (2d Cir.), *cert. denied*, 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978); *NLRB v. Triumph Curing Center, supra,* 571 F.2d at 471; *Oil Workers Union v. NLRB,* 547 F.2d 575, 584–85 (D.C. Cir. 1976), *cert. denied,* 431 U.S. 966, 97 S.Ct. 2923, 53 L.Ed.2d 1062 (1977).

### B. *The Refusal to Bargain*

As is the normal practice, Grede was formally notified by the Board when the decertification petition of Martinez and her three co-workers was filed. From the time of receiving that notice, Grede refused to bargain with the Union, though Grede had previously offered, and the Union had agreed, to meet and negotiate a collective bargaining agreement to replace the one that was about to expire. For the next several months, the two parties continued at loggerheads.

In early May, the Union filed an unfair labor practice charge based on Grede's involvement in the decertification campaign. (A complaint based on that charge was issued on June 25.) In late May, the Union once again offered to negotiate, but Grede refused, claiming a good faith doubt about the Union's continued majority status. By letter of June 27, Grede informed the Union that in accordance with Grede's prior notice and as provided for by the collective bargaining agreement, the agreement would terminate as of June 30. On the same date, Grede gave notice to Maywood plant workers of the contract's termination and of the effect that would have on their jobs. Specifically, Grede notified Maywood plant employees that the automatic checkoff of Union dues would stop; those employees who still wanted to pay dues would have to pay the Union directly. Grede also informed the workers that the bargained-for health and welfare benefits would cease but that the company temporarily would extend its own major medical insurance to the affected workers.

On July 1, 1975, the Board's Regional Director dismissed the decertification petition that had been filed by Lupe Martinez and others. Martinez appealed that dismissal but the action was subsequently affirmed. On July 21, the Union began a strike against Grede at the Maywood plant. The purpose of that strike, the Board later found, was to combat Grede's unfair labor practices against the Union. Ten days after the strike began, on the eve of the plant's annual two-week shutdown, Grede announced a wage increase for employees who returned to work when the plant reopened on August 18. At the end of September, workers at the Maywood plant were also informed of improvements in the company's medical and life insurance plans.

From this pattern of behavior, the Board found that Grede had committed unfair labor practices in two ways. First, the Board found that Grede's refusal to meet and negotiate over a new contract with the Union violated section 8(a)(5), 29 U.S.C. § 158(a)(5) (1976), notwithstanding Grede's protestations that it had a good faith doubt about whether the Union still represented a majority of the Maywood plant workers. Second, the Board ruled that Grede's various unilateral changes in employment benefits between July 1 and late September 1975 constituted violations of both sections 8(a)(5) and 8(a)(1).

An employer does not violate section 8(a)(5) if its refusal to bargain is based on a good faith and reasonably grounded belief that the incumbent union no longer enjoys the support of a majority of the bargaining unit employees. *See, e. g., NLRB v. Alvin J. Bart and Co.,* 598 F.2d 1267, 1271 (2d Cir. 1979); *NLRB v. Top Manufacturing Co.,* 594 F.2d 223, 224 (9th Cir. 1979); *Allied Industrial Workers v. NLRB,* 476 F.2d 868, 881 (D.C. Cir. 1973). But, as this court has previously said:

> The naked showing that a decertification petition has been filed, with no indication of the number of signatories or other related matters, is an insufficient basis in fact for refusing to bargain since it establishes no more than that the petition was supported by the requisite 30% "showing of interest."

*Allied Industrial Workers v. NLRB, supra,* 476 F.2d at 881–82. *Accord, Retired Per-*

*sons Pharmacy v. NLRB,* 519 F.2d 486, 490–91 (2d Cir. 1975); *Rogers Mfg. Co. v. NLRB,* 486 F.2d 644, 647 (6th Cir. 1973), *cert. denied,* 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 288 (1974).[1] Moreover, an employer that has itself orchestrated the union-ousting campaign cannot rely on the pendency of a decertification petition or the loss of majority status to justify its withdrawal of recognition of, and refusal to bargain with the incumbent representative. *NLRB v. Sky Wolf Sales, supra,* 470 F.2d at 830; *NLRB v. A. W. Thompson, Inc., supra,* 449 F.2d at 1336–37. *See also Medo Photo Supply Co.,* 321 U.S. 678, 687, 64 S.Ct. 830, 834, 88 L.Ed. 1007 (1944); *NLRB v. Alterman Transport Lines, Inc.,* 587 F.2d 212, 228 (5th Cir. 1979). We conclude, therefore, that there is ample basis in this record to support the Board's finding that Grede's refusal to negotiate with the Union violated section 8(a)(5). Having sustained that finding of the Board, it follows from the now well-accepted rules of conduct in this area that Grede's unilateral changes in benefits and related notices to its employees also violated both sections 8(a)(5) and 8(a)(1) of the Act. *See, e. g., NLRB v. North American Mfg. Co.,* 563 F.2d 894, 898 (8th Cir. 1977); *NLRB v. Hondo Drilling Co.,* 525 F.2d 864, 866–67 (5th Cir.), *cert. denied,* 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 78 (1976); *NLRB v. Sky Wolf Sales, supra,* 470 F.2d at 830.[2]

## C. The Union's Misconduct

From late April, when the Union was first confronted with Grede's unfair labor practices, the Union countered by appeals to the remedial processes of the Board and without recourse to its ultimate economic weapon. But on July 21, the Union struck. From its first moments the strike was marked by myriad instances of Union misconduct.

On the basis of the misconduct of the Union during the course of its strike, the Board found a violation of section 8(b)(1)(A) of the NLRA, 29 U.S.C. § 158(b)(1)(A) (1976). Because the Union's petition for review has been dismissed on joint motion of the parties, we have no occasion to pass on the correctness of that determination. The Union's strike misconduct does, however, set the background for the second major issue in this case: whether the Board abused its discretion in ordering Grede to take certain affirmative actions as a remedy for the employer's conduct.

1. Grede argues that the Board's position on this point is to the contrary, citing *Telautograph Corp.,* 199 N.L.R.B. 892 (1972). We disagree. The *Telautograph* case does not compel the rule that an employer's refusal to bargain is always excused by its knowledge that a decertification petition has been filed, and no such rule has been endorsed by the Board. Whatever may be the circumstances under which the filing of a decertification petition could excuse an employer from continuing to bargain with an incumbent representative, there is no question that, under existing Board precedent, Grede is not entitled to that defense on the facts of this case. *See Antonino's Restaurant,* 246 N.L.R.B. No. 136 (1979); *Providence Medical Center,* 243 N.L.R.B. No. 61, ALJ Decision at p. 64 n. 84 (1979); *Lammert Industries,* 299 N.L.R.B. 895 (1977), *enforced,* 578 F.2d 1223 (7th Cir. 1978).

We are aware that at least one Board member has proposed that the filing of a decertification petition is, by itself, a valid excuse for not bargaining with an incumbent representative, provided that the union's loss of majority status is not attributable to the employer's unfair labor practices. *See Antonio's Restaurant, supra,* at —— n. 3 (Member Penello, concurring). The Eighth Circuit, too, has adopted such a rule. *National Cash Register Co. v. NLRB,* 494 F.2d 189, 194 (8th Cir. 1974) (citing *Telautographic*); *accord, Royal Typewriter Co. v. NLRB,* 533 F.2d 1030, 1037 (8th Cir. 1976). The majority of the Board, however, rejects such a per se rule, requiring some objective evidence of loss of majority status in addition to the mere filing of a decertification petition. That rule has been endorsed by this court and two other courts of appeals. (See cases cited in text.) In any event, because Grede engaged in a decertification campaign, it is not entitled to the benefit of even the more generous per se rule.

2. The Board also found that Grede violated section 8(a)(1) during the strike by its electronic surveillance of the pickets. We conclude that there, too, the Board's findings are supported by substantial evidence on the record considered as a whole.

## II. THE REMEDY

■ Ordinarily, the remedy for a company's refusal to bargain with an already authorized employee representative is an order directing the company to meet with the union and bargain in good faith. *See Glomac Plastics, Inc. v. NLRB*, 592 F.2d 94, 101–02 (2d Cir.), *supplemental opinion*, 600 F.2d 3 (2d Cir. 1979); *NLRB v. Key Motors Corp.*, 579 F.2d 1388, 1390 (7th Cir. 1978); *Ex-Cell-O Corp. v. NLRB*, 449 F.2d 1058, 1063 (D.C. Cir. 1971); *NLRB v. Patent Trader, Inc.*, 426 F.2d 791, 792 (2d Cir. 1970) (en banc).[3] Such a bargaining order is, accordingly, the customary remedy when the employer's refusal to bargain is incident to its decertification campaign. *See NLRB v. Triumph Curing Center, supra*, 571 F.2d at 478; *NLRB v. A. W. Thompson, Inc., supra*, 449 F.2d at 1336–37. However, there have been a few cases in which a bargaining order was withheld and a "remedial election" ordered instead because the union had responded to the employer's unfair labor practices by its own misconduct of the most brazen and egregious sort. Relying on those case, the Administrative Law Judge in the case under review proposed withholding the bargaining order and requiring a remedial election in its place. On appeal, the Board rejected that recommendation and required Grede to bargain with the Union on the Union's request. In explaining its decision, the Board said that "the misconduct attributable to the Union in light of the serious provocation by the Company which preceded it . . . [is] an insufficient basis for withholding what would otherwise be the ordinary and necessary remedy for the Company's unfair labor practices." 235 N.L.R.B. at 366.

■ The function of this court in reviewing a remedial order of the Board is limited. Because the relation of remedy to policy is so singularly connected to the Labor Board's special competence and enlightenment gained from its experience, the board is afforded broad discretion to fashion remedies that will effectuate the policies of the Act. *Fibreboard Corp. v. NLRB*, 379 U.S. 203, 215–16, 85 S.Ct. 398, 405, 13 L.Ed.2d 233 (1964). "[I]ts choice of remedy must therefore be given special respect by reviewing courts." *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 612 n. 32, 89 S.Ct. 1918, 1939, n. 32, 23 L.Ed.2d 547 (1969). *See also United Steelworkers v. NLRB*, 430 F.2d 519, 520 (D.C. Cir. 1970). Its remedies will be enforced " 'unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act,' " *Fibreboard Corp. v. NLRB, supra*, 379 U.S. at 216, 85 S.Ct. at 406.[4] Due to changed circumstances in the facts of this case, we now find it unnecessary to decide whether the bargaining order issued by the Board was appropriate in this case.

■ To remedy Grede's unfair labor practices at the Maywood plant, the Board ordered that Grede cease and desist from that and similar conduct, and that Grede take specified affirmative action to offset the effects of its prior violations. The bargaining order was one, but only one, part of the affirmative action which the Board required Grede to take. Since the time the

3. *Accord, Sahara-Tahoe Corp. v. NLRB*, 581 F.2d 767 (9th Cir. 1978), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2837, 61 L.Ed.2d 284 (1979), *enforcing* 229 N.L.R.B. 1094 (1977) (order imposed, *inter alia*, affirmative bargaining duty on employer); *NLRB v. Physicians & Surgeons. Hospital*, 577 F.2d 305 (5th Cir. 1978), *enforcing* 231 N.L.R.B. 512 (1977) (same); *Pioneer Inn Associates v. NLRB*, 578 F.2d 835 (9th Cir. 1978), *enforcing* 228 N.L.R.B. 1263 (1977) (same); *Lammert Industries v. NLRB*, 578 F.2d 1223 (7th Cir. 1978), *enforcing* 229 N.L.R.B. 895 (1977) (same); *NLRB v. Windham Community Hospital*, 577 F.2d 805 (2d Cir. 1978), *enforcing* 230 N.L.R.B. 1070 (1977) (same).

4. In our review of the Board's choice of remedy, it is of no consequence that the Board rejected the recommendation of the Administrative Law Judge, for it is to the Board and not the Judge that Congress has committed the discretion to fashion appropriate remedies. *See Laborers' District Council v. NLRB*, 501 F.2d 868, 873 n. 16 (D.C. Cir. 1974); *Oil Workers Union, Local 3–89 v. NLRB*, 405 F.2d 1111, 1116 (D.C. Cir. 1968).

Board issued its final order, however, the facts as they relate to the propriety of its remedy have materially changed; the thrust of that order must also be changed.

After the Board rendered its decision in this case, Grede sold the Maywood plant to an unrelated company. That successor employer has reinstated those striking employees eligible for reinstatement, has recognized the Union as the exclusive bargaining representative, and has entered into a collective bargaining agreement. In these circumstances, to enforce the Board's order as originally issued would be to require Grede to do both what has already been done by another and what Grede no longer has authority to do.

At oral argument, counsel for the Board explained the Board's practice in such cases. An order issued by the Board is forwarded to a compliance officer in the appropriate regional office. That officer is authorized to accept as compliance with the Board's order something other than what the order specifically directs if doing so is made necessary by changed circumstances. In effect, this practice gives the regional compliance officer de facto authority to modify a Board order to adjust to changing circumstances.

Whatever the wisdom and propriety of such a practice for the Board, it is neither wise nor proper for the Board to petition this court to enforce an order which has become unenforceable or senseless at the time enforcement is sought. Nor will this court enforce a Board order with the tacit understanding that it is subject to de facto modification by some agent of the Board. If a change in circumstances materially affecting the Board's order occurs between the time that order becomes fixed, see NLRA § 10(d), 29 U.S.C. § 160(d) (1976), and the time it is enforced by this court, it

is expected that the Board will take appropriate action, either to withdraw its petition for enforcement or to recommend to this court how the Board's order might be modified to comport with the changed reality.

This does not imply that changed circumstances like those in this case will make a Board order moot. Generally, they will not. See NLRB v. Raytheon Co., 398 U.S. 25, 90 S.Ct. 1547, 26 L.Ed.2d 21 (1970); NLRB v. Family Heritage Homes-Beaver Dam, Inc., 491 F.2d 347, 350–51 (7th Cir. 1974); NLRB v. West Coast Casket Co., 469 F.2d 871, 873 (1972); Cap Santa Vue, Inc. v. NLRB, 424 F.2d 883, 886 (D.C. Cir. 1970). Moreover, the Board may in a proper case order a successor company which has not violated the Act to remedy the unfair labor practices of its predecessor. Golden State Bottling Co. v. NLRB, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973). Nevertheless, a court in its supervisory role may decline to enforce portions of a Board order that require affirmative action when that particular action has become futile at the time enforcement is sought. See Cagle's Inc. v. NLRB, 588 F.2d 943, 951 (5th Cir. 1979); Brockway Motor Trucks v. NLRB, 582 F.2d 720, 740 (3rd Cir. 1978).

In the case under review, the Board, at the request of the court, has provided a modified version of its order; that is the order the Board now requests to have enforced. The Board's recommended order does not require that Grede bargain with the Union but only that it cease and desist from its unlawful interference with its employees' statutory rights and that it mail a notice to its former employees that it will not again violate their rights as it had done during the recent dispute. We will accept the Board's recommendation with some slight adjustments to correct what appear to be oversights in drafting.[5] The order, as

---

5. The Board's original order was addressed to Grede, "its officers, agents, successors, and assigns." As noted, the Maywood plant is now operated by an employer other than Grede, one that has not violated the Act. Accordingly, the order as it will be enforced is addressed to Grede and "its officers and agents," but not to its "successors and assigns." Second, the original Board order, like its recommended substitute, contained a notice that Grede was required to send to its Maywood plant employees. In submitting its recommended modifica-

thus modified, is set forth in the appendix to this opinion. That order is, in our view, an appropriate means by which the unfair labor practices found to be committed by Grede might be remedied.

For the foregoing reasons, the company's petition for review is denied, and the Board's order, as modified by this court, is enforced.

*It is so ordered.*

### APPENDIX

The order of the National Labor Relations Board in the case under review, as modified by this court, reads as follows:

Respondent Maywood Plant of Grede Plastics, a Division of Grede Foundries, Inc., its officers and agents, shall:

1. Cease and desist from:

a. Infringing upon its employees' rights to self-organization, to join or assist labor organizations, or to bargain collectively through representatives of their own choosing, by promising employees raises, improved insurance, profit sharing, sick pay, additional holidays, retirement benefits or any other benefits or by threatening layoff or discharge to induce them to abandon membership in or support of any labor organization; by initiating and circulating among its employees a petition disclaiming a desire to be represented by a labor organization; by initiating and causing to be filed with the National Labor Relations Board any decertification petition; or by using surveillance equipment to eavesdrop or create the impression of eavesdropping on conversations of employees while engaged in concerted activities.

b. In any other manner, interfering with, restraining, or coercing employees in the exercise of their rights to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, or to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, or to refrain from any or all such activities.

2. Take the following action which is necessary to effectuate the policies of the Act:

a. Send to each of its employees in its employ at any time during the period from April through September, 1975, a copy of the notice attached hereto and marked "Appendix A." Copies of said notice to be furnished by the Regional Director for Region 13 shall, after being duly signed by Respondent Company's representative, be mailed immediately upon receipt thereof to said employees directed to their last known place of address.

b. Notify the Regional Director for Region 13, in writing, within 20 days from the date of this Order, what steps Respondent Company has taken to comply herewith.

### APPENDIX A
Notice To Employees

Mailed By Order of the National Labor Relations Board

An Agency of the United States Government

WE WILL NOT refuse to bargain collectively with Plastic Workers Union Local 18,

---

tion to this court, the Board adjusted the first paragraph of that notice to account for the fact that Grede is no longer the employer at the Maywood plant. For some reason, the Board omitted to make a parallel modification in the second paragraph of the notice. The order as it will be enforced contains the necessary adjustment. Finally, Grede argues, in response to the

Board's proposed modified order, that sending a notice to its former employees at this time will not effectuate the policies of the Act. It is, however, the Board's judgment that such a notice will help remedy the effects of Grede's former violations. We defer to the Board in this exercise of its discretion.

International Union of Dolls, Toys, Playthings, Novelties & Allied Products of the U.S. and Canada, AFL–CIO, when it is the exclusive representative of an appropriate unit of our employees.

WE WILL NOT unilaterally change rates of pay or other benefits, without first bargaining with the Union, when it is the exclusive representative of an appropriate unit of our employees.

WE WILL NOT promise employees raises, improved insurance, profit sharing, sick pay, additional holidays, retirement benefits, or any other benefits and we will not threaten them with layoff or discharge to induce them to abandon membership in or support of any labor organization.

WE WILL NOT initiate or circulate among our employees petitions which state that they do not desire to be represented by any labor organization.

WE WILL NOT initiate or cause to be ◆ filed with the National Labor Relations Board any decertification petition.

WE WILL NOT use surveillance equipment to eavesdrop or create the impression of eavesdropping on conversations of employees while they are engaged in protected concerted activities.