## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## LEATHERWOOD DRILLING COMPANY, Respondent.

## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## BRAHANEY DRILLING COMPANY, Respondent.

### Nos. 74–2415, 74–2421.

United States Court of Appeals, Fifth Circuit.

May 27, 1975.

Rehearing Denied July 24, 1975.

Elliott Moore, Deputy Associate Gen. Counsel, Bert Bisgyer, N.L.R.B., Washington, D. C., W. Edwin Youngblood, Director, Region 16, N.L.R.B., Ft. Worth, Tex., for petitioner.

Brooks L. Harman, Odessa, Tex., for respondents.

Before BROWN, Chief Judge, and MURRAH* and WISDOM, Circuit Judges.

MURRAH, Circuit Judge:

This consolidated appeal is before the Court on petition of the National Labor Relations Board to enforce the Board's orders finding that the Leatherwood and Brahaney Drilling Companies each violated §§ 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(5) and (1), by withdrawing recognition from and refusing to bargain with Local 826, International Union of Operating Engineers, AFL–CIO (the Union). Both drilling companies challenge the sufficiency of the evidence to support the Board's conclusion that neither could assert good faith doubt of the Union's majority status as a justification for refusal to bargain. We enforce the Board's orders.

Leatherwood and Brahaney are two of the fifty to sixty oil well drilling companies who operate in the Permian Basin, an area of 95,000 square miles in Western Texas and Eastern New Mexico. Companies in this area normally take

* Of the Tenth Circuit sitting by designation.

less than twenty days to drill a well, then move the rig to a new site where a substantially new crew may be hired or the old crew rehired, resulting in high employee turnover. Taking this employment pattern into account, the Board fashioned and we approved a special voter-eligibility formula[1] for elections to certify the employee bargaining representatives in this particular area. Hondo Drilling Co., 164 N.L.R.B. 416 (1967); affirmed, N.L.R.B. v. Hondo Drilling Co., 428 F.2d 943 (5th Cir. 1970). The Union was certified in 1969 pursuant to a Hondo election conducted among the employees of each of the two companies. The validity of those elections is not questioned here.

 It is settled that in the absence of special circumstances, a union's majority status, once established by a valid election, is irrebuttably presumed for a reasonable period, ordinarily one year, following the Board's certification of the union. Brooks v. N.L.R.B., 348 U.S. 96, 98, 75 S.Ct. 176, 99 L.Ed. 125 (1954); N.L.R.B. v. Anvil Products, Inc., 496 F.2d 94, 96 n.3 (5th Cir. 1974); N.L.R.B. v. Gulfmont Hotel Co., 362 F.2d 588, 589 (5th Cir. 1966). Since the certification year has expired in our case, the presumption of the Union's continued majority status is rebuttable. N.L.R.B. v. Anvil Products, Inc., supra at 96 n.3; N.L.R.B. v. Gulfmont Hotel Co., supra at 589; Terrell Machine Co. v. N.L.R.B., 427 F.2d 1088, 1090 (4th Cir. 1970), cert. denied, 398 U.S. 929, 90 S.Ct. 1821, 26 L.Ed.2d 91 (1970); N.L.R.B. v. Frick Co., 423 F.2d 1327, 1330–1331 (3rd Cir. 1970); N.L.R.B. v. Little Rock Downtowner, Inc., 414 F.2d 1084, 1090–1091 (8th Cir. 1969). And Leatherwood and Brahaney can lawfully refuse to bargain with the Union if and only if at the time of their refusal they had reasonable and good

faith grounds for doubting the Union's continued majority status. N.L.R.B. v. Gissel Packing Co., 395 U.S. 575, 597 n.11, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969); N.L.R.B. v. A. W. Thompson, Inc., 449 F.2d 1333, 1336 (5th Cir. 1971), cert. denied, 405 U.S. 1065, 92 S.Ct. 1497, 31 L.Ed.2d 795 (1972); N.L.R.B. v. Gulfmont Hotel Co., supra at 589; N.L.R.B. v. Frick Co., supra at 1331; N.L.R.B. v. Little Rock Downtowner, Inc., supra at 1091. The sole issue for our review is whether "substantial evidence on the record considered as a whole" supports the Board's findings that neither Leatherwood nor Brahaney had reasonable grounds for such doubt. 29 U.S.C. § 160(e). We know, of course, of the Board's "very broad" discretion in the administration of the Act particularly with respect to the appropriateness of bargaining units and the certification of bargaining representatives. N.L.R.B. v. Bogart Sportswear Mfg. Co., 485 F.2d 1203, 1206 (5th Cir. 1973). A reviewing court will give "special respect" to the Board's findings and disturb them only upon a showing of abuse of discretion. N.L.R.B. v. Muscogee Lumber Co., 473 F.2d 1364, 1366 (5th Cir. 1973); Golden State Bottling Co. v. N.L.R.B., 414 U.S. 168, 172, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973); Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 491, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

At the administrative hearing, the companies argued that the facts support doubt of the Union's majority status, based upon (1) the employee turnover rate; (2) the five to ten month Union silence immediately preceding withdrawal of recognition; and (3) in the case of Brahaney, evidence of employee indifference to the Union.

The Administrative Judge who presided over both cases found the following

---

1. The formula grants voting eligibility to the following workers:

"All roughnecks who have been employed by [a drilling company] for a minimum of 10 working days during the 90 calendar-day period preceding the issuance of [the Board's] Decision and Direction of Election herein, and who have not been terminated for cause or quit voluntarily prior to the completion of the last job for which they were employed, as well as all roughnecks whose names appear on [the drilling company's] payroll list immediately preceding the issuance of the Regional Director's notice of election . ."

N.L.R.B. v. Hondo Drilling Co., supra at 945.

facts. The Union had not communicated with either Brahaney or Leatherwood for five to ten months immediately preceding withdrawal of recognition, but this silence, together with other delays in the two-year history of the bargaining, was caused by the Union's low manpower, the geographic dispersal of all the Basin drilling companies, and the Union's belief that Leatherwood and Brahaney had reduced operating levels. Although employee turnover had reached 900% during the last period of Union silence and Brahaney and Leatherwood each employed less than four of the original certification voters out of the present work force of eligible voters numbering as high as seventy-seven, such turnover was not uncommon among Basin companies and had been assumed to be inherent in the industry under the Hondo formula. Harman, the attorney for both Leatherwood and Brahaney, was "highly familiar with the history of organization by this Union in the Permian Basin," and, as attorney for other Basin drilling companies, had met with a Union representative on numerous occasions during the period of Union silence toward Leatherwood and Brahaney. The sole evidence of employee indifference was testimony by a Brahaney manager that he did not hear employees speak of the Union.

The Administrative Judge concluded that (1) even 900% employee turnover did not support doubt of majority, in view of Hondo's recognition of inherent turnover in this industry; (2) occasional Union silences were known by the companies to be the result of the Union's low manpower and not any erosion of Union support; and (3) there is no substantial evidence of employee indifference to the Union. Accordingly, he found that none of the claimed grounds supported a reasonable doubt of majority and recommended that the two companies be ordered to bargain with the Union representatives and to desist from unfair labor practices. The Board adopted these findings as well as the proposed order.

The appellants do not dispute the factual data in the Board's order; but they cite other facts on the record to argue that other inferences should have been drawn or that, at the least, the burden of proof was necessarily shifted to the Union and not met by it. They emphasize the magnitude of 900% employee turnover. But in our view, this only reargues what has been decided in Hondo, i. e., that turnover is inherent in this industry and cannot be given independent significance as a sign of Union weakness. N.L.R.B. v. Hondo Drilling Co., supra at 944–946.

Disputing that the Union's low manpower and the companies' dispersal were the evident causes of the Union silence, appellants point out that other union assistants were available to the two Union negotiators and that the Union's negotiations followed the same pattern in the case of at least five Basin companies. Nevertheless, we agree with the Board that such a negotiating team, faced with over fifty companies in a 95,000 square mile area, would necessarily fail to communicate with one or more companies at intervals without raising doubt of its majority status.

Finally, appellants challenge the basis for distinguishing other Board cases in which the Board found that the facts supported reasonable and good faith doubt of majority status. See Taft Broadcasting, WDAF–TV, 201 N.L.R.B. 113 (1973); Southern Wipers, Inc., 192 N.L.R.B. 135 (1971); Viking Lithographers, Inc., 184 N.L.R.B. 16 (1970). In the findings adopted by the Board, these cases are said to be "inapposite," and it is not our province to weigh the imponderables and reconcile the considerations which prompt the Board to fashion an appropriate remedy peculiar to each case. It suffices that none of the cases involved an industry with inherent turnover and lack of Union manpower.

■ On the record as a whole and given the province of the Board, we agree that the appellants have not overcome the presumption of continuity of majori-

ty status and, therefore, have no room for good faith doubt of the viability of the Union's continued representation of the bargaining unit.

Enforced.