NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

A. W. THOMPSON, INC., Respondent.

No. 75–2912.

United States Court of Appeals,
Fifth Circuit.

Jan. 8, 1976.
Rehearing and Rehearing En Banc
Denied Feb. 26, 1976.

Elliott Moore, Stanley Zirkin, Bert Bisgyer, Deputy Association Gen. Counsel, N. L. R. B., Washington, D. C., W. Edwin Youngblood, Director, Region 16, N. L. R. B., Ft. Worth, Tex., for petitioner.

Brooks L. Harman, Odessa, Tex., for respondent.

Before GOLDBERG and AINSWORTH, Circuit Judges, and NICHOLS,* Associate Judge.

AINSWORTH, *Circuit Judge:*

This case is before us on petition of the National Labor Relations Board for enforcement of its order of February 25, 1975 against A. W. Thompson, Inc. [Company], one of approximately 60 oil well drilling contractors operating in the Permian Basin, an area covering about 160,000 square miles in West Texas and New Mexico. The company operates eleven rigs which are spread out over this vast area. Rig No. 1, for example, is 165 miles from Rig No. 11. Frequent

* Of the U. S. Court of Claims, sitting by designation.

relocation of operations and high employee turnover are distinguishing features of the industry.[1]

On December 28, 1973, the Company withdrew recognition from Local 826, International Union of Operating Engineers, AFL-CIO [the Union] which had been certified by the Board as the exclusive bargaining representative of the appropriate unit of Company employees. Three days later, on December 31, 1973, the then current contract between the parties expired. Thereafter, on January 6 and April 14, 1974, without notification or consultation with the Union, the Company unilaterally granted wage increases to its employees. The Board found the Company to be in violation of Sections 8(a)(5) and (1) of the National Labor Relations Act by engaging in the following unfair labor practices: refusing to bargain; withdrawing recognition from the Union; refusing to furnish the Union with data relating to names and addresses of employees; and unilaterally granting wage increases to its employees.

The Board seeks to enforce its order requiring the Company to cease and desist from those unfair labor practices. The Company resists enforcement of the Board's order, contending that because of its good-faith doubt of the Union's continuing majority status, it was entitled to withdraw recognition, to withhold the personnel lists and to grant the wage increases. The Board found that the Company failed to meet its burden of proving a good-faith doubt. The question before us is whether the record as a whole supports that finding,[2] inasmuch as the Company justifies its actions, found to be violative of the Act, by the existence of its good-faith doubt of the Union's continuing representation.

■ In the absence of special circumstances a union's majority status is irrebuttably presumed for one year following certification by the Board. At the expiration of that year the presumption continues subject to rebuttal on proof by the company that it entertains a good-faith doubt of the union's continued majority status. See N. L. R. B. v. Hondo Drilling Co., N.S.L., supra, decided today, and cases cited therein. Such a doubt, however, must rest on a reasonable basis and may not depend solely upon unfounded speculation or a subjective state of mind. See N. L. R. B. v. Gulfmont Hotel Company, 5 Cir., 1966, 362 F.2d 588, 589; General Electric Co., Battery Prod., Cap. Dept. v. N. L. R. B., 5 Cir., 1966, 400 F.2d 713, 727. Applying those principles to the present proceedings, we have no difficulty in understanding the Board's conclusion that the Company failed to support its burden of proof.

## FACTORS RELIED ON BY THE COMPANY AS A BASIS FOR ITS GOOD–FAITH DOUBT

■ We need not elaborate at length on the reasons given by the Company to support its alleged good-faith doubt, for it offered no objective proof that any of the employees, much less a majority of them, no longer desired union representation. The reasons asserted by the Company are based either on assumptions of fact not supported by the evidence, or have little or no connection with the relevant inquiry, i. e., whether or not the Union continued to maintain majority status.

### a. Magnitude of employee turnover

The Company asserts, as the principal basis for its doubt, the rapid turnover of employees. Recent decisions by this Court concerning drilling operations in the Permian Basin under circumstances virtually indistinguishable from those in the present case obviate the necessity of

1. See, e. g., N. L. R. B. v. Hondo Drilling Co., N.S.L., 5 Cir., 1976, 525 F.2d 864; N. L. R. B. v. Leatherwood Drilling Company, 5 Cir., 1975, 513 F.2d 270, cert. denied, —— U.S. ——, 96 S. Ct. 449, 46 L.Ed.2d 387 (1975); N. L. R. B. v. Hondo Drilling Co., 5 Cir., 1970, 428 F.2d 943.

2. See Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

further discussion of this issue. *See N.L.R.B. v. Leatherwood Drilling Company*, 5 Cir., 1975, 513 F.2d 270 at 273, *cert. denied,* —— U.S. ——, 96 S.Ct. 449, 46 L.Ed.2d 387 (1975), in which we held that employee "turnover is inherent in this [drilling] industry and cannot be given independent significance as a sign of Union weakness," and *N.L.R.B. v. Hondo Drilling Co., N.S.L.,* 5 Cir., 1976, 525 F.2d 864 at 868–869, consolidated herewith for argument and decided today, in which the *Leatherwood* holding is reiterated.[3]

In addition to rapid employee turnover, the Company contends that the following factors influenced its good-faith doubt of continued Union majority status: failure of the Union to appoint rig stewards, to process grievances and to use bulletin boards, lack of communication between Union and Company, and alleged comments from employees manifesting dissatisfaction with the Union.

### b. Absence of rig stewards and processing of grievances

The Company contends that despite provisions in the Working Agreement between the parties for the processing of grievances and the appointment by the Union of rig stewards, the Union has failed to take advantage of either benefit, thus creating a Company doubt of continued Union representation. While it is undisputed that the Union neither appointed stewards for any of the rigs nor processed grievances with the Company, the evidence shows and the Board found that the Company was unable to prove that the Union's failure in either respect reflected adversely on its responsibilities as bargaining representative. No grievances were ever processed because no grievances were ever filed by

the employees and there is nothing in the record to indicate employee discontent sufficient to justify the filing of grievances. Since one of the primary duties of a rig steward is to resolve disputes among the employees and to process grievances in their behalf, we find it without significance that no rig steward was appointed.

### c. Alleged failure of the Union to use bulletin boards

There is no merit to this contention. First, the record does not support it; bulletin boards were in fact used occasionally. Secondly, there was no requirement that the Union make use of the bulletin boards. The record shows that direct mailings were preferred by the Union as a means of employee communication because of the privacy of the communication, and the time and expense involved by Union representatives being required to travel from one rig to another in order to make use of the bulletin boards. Thirdly, and most importantly, there is no apparent connection between the use of bulletin boards and the creation of a good-faith doubt by the Company of the Union's continued majority status.

### d. Lack of communication between Union and Company

Here again the evidence does not support the contention that there was no communication from the Union to the Company between May 29 and October 22, 1973. Moreover, even if the statement were correct it would be rejected as evidence supporting a reasonable belief that the Union had lost its majority. This is because of the unique situation existing in the Permian Basin—the Union's low manpower and the geographic dispersal of the drilling companies oper-

**3.** The employee turnover is approximately 400 per cent and only 20 to 25 of the original 103 employees voting in the election were still employed when Union recognition was withdrawn. Leatherwood Drilling Company had an employee turnover of 900 per cent; Hondo Drilling Company, 1700 per cent. The three drilling companies, A. W. Thompson, Inc., Leatherwood and Hondo, are all represented in negotiations with the Union by Brooks L. Harman, attorney. The exclusive representative of the employees in the appropriate bargaining units of the three companies is Local 826, International Union of Operating Engineers, AFL–CIO.

ating in the area which may reasonably account for long periods of silence. *See N.L.R.B. v. Leatherwood Drilling Company, supra,* 513 F.2d at 273.

### e. Alleged unfavorable employee comments

Evidence in favor of the Company's assertion relative to unfavorable employee comments came from the testimony of the Company's President and his administrative assistant. The Board found this testimony vague, partaking of hearsay and unconvincing. A review of the pertinent parts of the transcript leads us to the same conclusion. The alleged dissidents were estimated at between 4 to 6 out of a unit of approximately 200 employees, no names were given and the alleged dissatisfaction was based in part on the witnesses' interpretation of conversations with employees.

We conclude that the Board's findings are supported by the record and that the Company failed to prove that it had a good-faith doubt of the Union's continuing majority status necessary to justify its actions allegedly based on that doubt.

Enforced.