NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

A. W. THOMPSON, INC., Respondent.

Nos. 71–1130, 75–2912.

United States Court of Appeals,
Fifth Circuit.
Unit A

July 31, 1981.
As Amended Sept. 4, 1981.

**1142**

Marcel Mallet-Prevost, Asst. Gen. Counsel, Stanley Zirkin, N.L.R.B., Washington, D. C., for petitioner in 75–1130.

Elliott Moore, Deputy Associate Gen. Counsel, Bert Blsgyer, N.L.R.B., Washington, D. C., for petitioner in 75–2912.

Paul Elkind, Asst. Gen. Counsel for Contempt Litigation, N.L.R.B., Washington, D. C., for petitioner in both cases.

Joseph Connally, Odessa, Tex., for respondent in 75–1130.

Andrew C. Partee, Jr., New Orleans, La., for respondent in both cases.

Brooks L. Harman, Odessa, Tex., for respondent in 75–2912.

A. W. Thompson, Inc., Midland, Tex., pro se in both cases.

Before BROWN, GOLDBERG and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

In this, our third examination of the difficult collective-bargaining relationship between A. W. Thompson, Inc. (the employer) and Local 826 of the International Union of Operating Engineers (the union), the National Labor Relations Board petitions the court for an adjudication of civil contempt against the employer. The Board claims that the employer, by withdrawing recognition of the union after conducting a poll which showed less than majority support, violated prior orders of this court issued in *NLRB v. A. W. Thompson, Inc.*, 449 F.2d 1333 (5th Cir. 1970), *cert. denied*, 405 U.S. 1065, 92 S.Ct. 1497, 31 L.Ed.2d 795 (1972) (*"Thompson I"*) and *NLRB v. A. W. Thompson, Inc.*, 525 F.2d 870 (5th Cir. 1975), *cert. denied*, 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 78 (1976) (*"Thompson II"*). The employer claims that the poll, along with other evidence, supported a good-faith doubt as to the union's continuing majority status and thus justified withdrawal of recognition. This court referred the Board's petition to a Special Master and we now have the Master's report before us for consideration. We hold that the employer is in contempt of our prior orders and once again order the employer to bargain in good faith with the union.

A. W. Thompson, Inc. is engaged in drilling oil and gas wells in the Permian Basin, a 160,000 square mile area of West Texas and New Mexico. In August 1966, Local 826 won an NLRB election and became the collective-bargaining agent for all of Thompson's nonsupervisory employees. In the fifteen years since the union's certification, the parties have signed only three, one-year collective-bargaining agreements. At the expiration of each agreement, the employer has unilaterally withdrawn recognition of the union, claiming a good-faith doubt as to the union's continuing majority support. The withdrawal of recognition after the first two agreements led to NLRB unfair labor practice orders against the employer; both orders were enforced by this court. *Thompson I & II, supra.* The third agreement between the union and Thompson was signed on November 30, 1977. At

the same time the company was negotiating that agreement with the union, the company was also negotiating with Santa Fe International Corporation for the acquisition of all of Thompson's stock by Santa Fe. Apparently Santa Fe required that Thompson reach agreement with the union before the acquisition became final. Although the acquisition did not change Thompson's corporate identity, Santa Fe has taken control of the company's labor relations.[1]

The employer again refused to bargain with the union upon the expiration of the third agreement on November 6, 1978. The company conducted a poll of employees by secret ballot on November 20 and 21 in which a majority of the employees voted against representation by Local 826.[2] In light of the poll results, the employer withdrew recognition, claiming for the third time a doubt as to the union's continuing majority status. The doubt was based upon the poll and on several other factors similar to those rejected by this court in the 1975 case. The critical issue on appeal is whether the employer met its burden of proving a good-faith doubt as to the union's majority status. On its face, the poll of employees appears to be strong evidence of a loss of union support. The Board maintains, however, that taking the poll itself constituted an unfair labor practice and that the poll thus cannot be used to support the employer's actions.

 In order for an employer unilaterally to withdraw recognition of a certified bargaining representative it must show by clear and convincing evidence that it had a good-faith doubt as to union's continuing majority support. *J. Ray McDermott & Co. v. NLRB*, 571 F.2d 850, 858–59 (5th Cir.), *cert. denied*, 439 U.S. 893, 99 S.Ct. 250, 58 L.Ed.2d 238 (1978). Moreover, the doubt cannot be a mere suspicion; it must be reasonably based on objectively verifiable

evidence. *Id.; NLRB v. A. W. Thompson, Inc., supra*, 525 F.2d at 871. The employer cites several factors which led it to suspect that the union had lost its support: the poll of employees, the lack of employee participation in union affairs, employee turnover, failure of the union to process grievances, post notices on bulletin boards, and appoint stewards, absence of employee conversations about the union, and the change of ownership of the company. Except for the poll and the change of ownership, these are the same factors relied upon and rejected by this court in *Thompson II*, and we once again find them insufficient to support a good-faith doubt. These factors are also similar to ones rejected in other cases involving Permian Basin employees where this court examined the nature of the oil-drilling industry and the wide dispersion of employees in the area and concluded that what might seem like union inaction or indifference in a more compact industrial setting was not indicative of lack of union support in this setting. *NLRB v. Hondo Drilling Co.*, 525 F.2d 864 (5th Cir.), *cert. denied*, 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 78 (1976); *NLRB v. Leatherwood Drilling Co.*, 513 F.2d 270 (5th Cir.), *cert. denied sub. nom. Brahaney Drilling Co. v. NLRB*, 423 U.S. 1016, 96 S.Ct. 449, 46 L.Ed.2d 387 (1975). Absent verifiable, objective evidence that the change in the ownership of the company's stock changed the employees' attitude about the union, the employer's claim that the ownership change supported a good-faith doubt is just the kind of "unfounded speculation" condemned in previous cases. *NLRB v. A. W. Thompson, Inc., supra*, 525 F.2d at 871; *see also NLRB v. Burns International Security Services, Inc.*, 406 U.S. 272, 278–79, 92 S.Ct. 1571, 1577–78, 32 L.Ed.2d 61 (1972).

The only remaining basis for the employer's doubt is the poll of employees. Al-

---

1. Brooks Harmon, the attorney handling labor negotiations for the company prior to the acquisition, continues to be the company's chief labor relations spokesman and negotiator.

2. Apparently there were 172 employees at the tin't of the poll. The company's tally showed 88 votes against representation, 72 votes in

favor of representation, and 4 blank votes. Eight employees did not vote. The Board challenges the eligibility of several of the voters, the exclusion of other voters, and the methods used in conducting the poll. We do not reach those issues in deciding this appeal, however.

though the Board maintains that the poll was inherently unreliable due to procedural defects and errors in the list of eligible voters, the Board does not contend that the poll was not evidence of a loss of union support. Instead, the Board maintains that the poll itself was unlawful and could not support the employer's doubt. The company asserts that the taking and use of a poll of employees is both valid and helpful if it complies with the procedural safeguards set out by the Board in *Struksnes Construction Co.*, 165 NLRB 1062 (1967). *Struksnes* is not entirely on point, however, since in that case the employer sought to poll employees about their union sentiment prior to the initial certification of the union. At that point there is no presumption that the union has majority support as there is after certification, and the burden is on the union rather than the employer to demonstrate the employees' support for the union or lack thereof. Moreover, at the pre-certification stage the congressional policy of encouraging stability of established bargaining relationships does not come into play.

In *Montgomery Ward & Co.*, 210 NLRB 717 (1974), the Board explicitly declined to extend the *Struksnes* rules to post-certification situations, holding that "absent valid objective considerations justifying a belief in the Union's lack of continuing majority status, . . . the [employer] was not legally entitled to seek to undercut the continuing majority status of the Union by itself initiating a poll of employee sentiment." The Board went on to hold that to allow the employer to use the fruits of such a poll to support a withdrawal of recognition would be contrary to the purposes of the labor act. This court discussed *Montgomery Ward* in *NLRB v. Randle-Eastern Ambulance Service, Inc.*, 584 F.2d 720 (5th Cir. 1978). In holding that the employer had met its burden of proving a good-faith doubt, the court noted:

The Company need not have conclusive proof that a majority of employees do not support the Union. Indeed, the only way that it could have garnered such proof was by an employee poll, but that is forbidden unless the employer has "objective evidence to support a good faith doubt of majority status," the same standard used to determine the lawfulness of withdrawing recognition. (Citing *Montgomery Ward*)

584 F.2d at 729.

Notwithstanding the *Randle-Eastern* dictum, we are not convinced that an employer may conduct an employee poll only when it has no actual need to do so, that is, when it already has sufficient objective evidence to justify withdrawal of recognition. Two other circuits, also in dicta, have implied that a noncoercive poll may be taken to gauge employee sentiment. *Pioneer Inn Associates v. NLRB*, 578 F.2d 835, 840 & n.3 (9th Cir. 1978); *NLRB v. North American Manufacturing Co.*, 563 F.2d 894, 896 (8th Cir. 1977). Neither of these cases discussed *Montgomery Ward*, however, and neither decided under what conditions a poll may be taken. This court has not adopted the *Montgomery Ward* approach and we decline to do so now if it represents, in practical effect, an outright ban on employer-sponsored polls of employee sentiments in regard to a certified union.

 It is for the employees alone to decide whether they wish to be represented by a union in the first instance and to decide whether they wish to oust an incumbent union and either replace it with another union or forego union representation entirely. The national labor policy favors employee free choice in such matters. The employer, although an interested party, has a limited role in the representational choice of employees. We appreciate the Board's concern, expressed in *Montgomery Ward*, that polling by employers may undercut a union's majority status and may even subvert the Board's electoral processes.[3]

---

**3.** As the Board stated in *Struksnes*, "any attempt by an employer to ascertain employee views and sympathies regarding unionism generally tends to cause fear of reprisal in the mind of the employee if he replies in favor of unionism and, therefore, tends to impinge on his Section 7 rights." 165 NLRB at 1062. That fear need not have a strong basis in fact for it

Nevertheless, polling can be a useful and legitimate tool when the employer's sincere doubt of the union's majority status is based on objective evidence which falls short of that needed to justify withdrawal of recognition. We hold that when an employer "has not engaged in unfair labor practices or otherwise created a coercive atmosphere,"[4] it may, after giving notice to the union, poll the employees for their union sentiment if there is other substantial, objective evidence of a loss of union support (even if that evidence is not sufficient by itself to justify withdrawal) and if the poll meets the procedural guidelines set out in *Struksnes*. This test, which incorporates the safeguards established by the Board in *Struksnes*, is a reasonable accommodation of the employer's interest in testing the union's support and the Board's interest in preventing repeated polls which themselves can be coercive. The substantial, objective evidence must show that the union has lost support. Thus, if a union wins a certification election by a slim margin, that margin itself, or other factors present at the time of certification, cannot be used as evidence of a *loss* of support to justify a poll. The proper test, as we have stated herein, may, in fact, prevent unfair labor practices and reduce the need for Board and court involvement in collective-bargaining disputes. Our test avoids the situation in which an employer must risk unfair labor practice charges (by withdrawing recognition) to find out whether the evidence of loss of support is sufficient to justify that withdrawal. Now, faced with such evidence, the employer can conduct a poll to determine the level of support for the union.

■ Thompson has not met our test in the present case, however. During the sixteen years in which the union has been the certified bargaining representative of A. W. Thompson's nonsupervisory employees, only three, one-year collective-bargaining agreements have been signed. Upon the expiration of each of the agreements, the employer has withdrawn recognition of the union

and taken advantage of the drawn-out nature of Board enforcement proceedings to delay the resumption of good-faith bargaining. Twice before this court has held that Thompson's actions constitute unfair labor practices. *Thompson I & II, supra.* Since the employer has engaged in repeated unfair labor practices, it cannot now under such circumstances properly conduct a poll. In addition, we do not find the other evidence of loss of union support proffered by the employer to be substantial. As we noted in *Thompson II*, the factors cited by the company reflect the nature of the industry and the region more than any union weakness. The only new factor cited by the employer, the purchase of the corporate stock by Santa Fe, certainly tells us nothing about employee sentiment. Unless the employer can show some concrete evidence, not present at the time of initial certification, that the union has lost its majority support, it cannot conduct a poll. Nothing the employer now offers constitutes such evidence.

■ We therefore hold that the employer's withdrawal of recognition of the union was not justified. The withdrawal thus violates the orders of this court in *Thompson I & II, supra.* Since this is the third time the employer has improperly withdrawn recognition of the union we would normally have no qualms about imposing a schedule of prospective fines against the employer for future violations. However, in light of the change in the ownership of the company, and the assumption of Thompson's labor relations functions by the Santa Fe office, we do not now impose prospective fines. The imposition of such fines is an extraordinary remedy and should be imposed only where violations have been flagrant and lesser remedies appear likely to fail. To say the least, it is premature to assume that Santa Fe will not abide by our order and that the contempt remedy is likely to fail.

It is therefore ORDERED AND ADJUDGED that the respondent, A. W.

to have a chilling effect on employee free choice.

4. *Struksnes Construction Co., supra*, 165 NLRB at 1063.

Thompson, Inc., is in civil contempt for having violated the orders of this court dated April 26, 1972 and November 2, 1976. It is ORDERED that A. W. Thompson, Inc. shall purge itself of civil contempt by:

1. Fully complying with the judgments of April 26, 1972 and November 2, 1976, and each of the provisions of the Board's orders thereby enforced;

2. Notifying the union in writing within 15 days from the entry of this order that it recognizes the union as the exclusive representative of its employees in the designated unit and that, upon request of the union, it will bargain collectively in good faith with the union as the exclusive representative of the company's employees in the designated unit until full agreement or *bona fide* impasse is reached; and if any understanding is reached following such bargaining, incorporating such understanding in a written agreement. In no event shall the company refuse to meet with the union at reasonable times or withdraw recognition from the union as collective bargaining representative without further order of the court;

3. Immediately posting in conspicuous places, including all places where notices to employees customarily are posted, for a period of sixty (60) consecutive days, copies of an appropriate notice in the form prescribed by the Board, signed by the company, which states that the company has been adjudicated in civil contempt of court for violating, resisting, disobeying, and failing and refusing to comply with the court's said judgments and that the company will take the action in purgation ordered by the court, and by maintaining such notices and a copy of the contempt adjudication in clearly legible condition throughout such posting period, and insuring that they are not altered, defaced, or covered by any other material;

4. Mailing to each of its current employees and all former employees employed by the company at any time since October 1, 1978, copies of the notice and of the contempt adjudication referred to in the preceding paragraph; and reading said notice to its employees at each rig, by shift, and in the yard, by an appropriate representative of the company;

5. Paying to the Board all costs and expenditures, including counsel fees, incurred by the Board in the investigation, preparation, presentation, and final disposition of this proceeding to adjudge the company in civil contempt, and all costs relative to the Special Master, said amount, unless agreed upon by the parties, to be fixed by the court upon submission by the Board of a certified statement of costs and expenses.

ORDERED AND ADJUDGED.