**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 23, 2009

Charles R. Fulbruge III
Clerk

No. 08-60368

NATIONAL LABOR RELATIONS BOARD

Petitioner

v.

GRENADA STAMPING AND ASSEMBLY INC.

Respondent

On Petition to Enforce the Orders of the
National Labor Relations Board
26-CA-22031, 26-CA-22041, 26-CA-22077

Before JONES, Chief Judge, and WIENER and BENAVIDES, Circuit Judges.
PER CURIAM:[*]

The National Labor Relations Board ("NLRB") petitions for enforcement of its order compelling Respondent[1] Grenada Stamping and Assembly, Inc. ("Grenada") to bargain with the United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied-Industrial and Service Workers International

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1]5 TH CIR. R. 15.2 denominates Grenada the petitioner for purposes of briefing and oral argument, but we refer to its true party position in the opinion.

Union ("the Union") as the presumptive collective bargaining agent of Grenada's employees. The NLRB issued its order after affirming the ruling of the Administrative Law Judge ("ALJ") in a proceeding filed by the Union against Grenada in which the Union complained that the poll of employees conducted by Grenada and a ban by Grenada on discussions about the Union on the plant floor violated Section 8(a)(1) of the National Labor Relations Act (the "Act"). The Union also claimed that Grenada and its predecessors (all respondents before the ALJ) violated Sections 8(a)(1) and 8(a)(5) of the Act by (1) refusing to recognize the Union as the exclusive collective bargaining representative of its employees, to bargain with the Union, and to provide the Union with necessary and relevant information requested by the Union, and (2) improperly making changes to its employees' benefits.

Ruling in favor of the Union, the ALJ concluded that (1) the poll conducted by Grenada to determine whether the Union still enjoyed the support of a majority of the employees was not, as required, conducted by a secret ballot, (2) the poll was conducted in a coercive atmosphere or otherwise as an unfair labor practice, (3) adequate assurances against reprisals were not given, and (4) reasonable advance notice of the poll was not furnished to the Union. In this regard, the ALJ ruled — and Grenada cannot and does not seriously challenge — that Grenada was the "perfectly clear successor" to its predecessor, Grenada Manufacturing LLC, from the bankruptcy estate of which Grenada had acquired all assets. The ALJ concluded that Grenada's successor status required it to recognize the Union and to bargain with it.

On appeal, the NLRB addressed only the ALJ's rulings that (1) Grenada was a perfectly clear successor to its predecessor, (2) Grenada failed to give the Union reasonable advance notice of the poll, and (3) Grenada did not conduct the

poll by secret ballot. The NLRB did not address other findings and rulings of the ALJ regarding the poll.[2]

After so ruling, the NLRB timely petitioned us for enforcement of its order. Grenada opposes enforcement, and the Union, as intervener, supports it.

1.  **Standard of Review**

We review the NLRB's findings of facts for substantial evidence, its conclusions of law *de novo*, and its reasonable construction of labor laws with deference.[3] A factual finding is supported by substantial evidence if there is "more than a scintilla" of evidence supporting it, so that the relevant evidence permits a reasonable mind to accept the NLRB's conclusions.[4] The evidence is reviewed for sufficiency in light of the record as a whole, including any evidence that fairly detracts from the NLRB's findings.[5]

2.  **Applicable Law**

To withdraw recognition of a union, an employer must have actual proof that the union has lost the support of a majority of its employees.[6] One method by which an employer may make this determination is by conducting a poll of its employees after the employer has formed a good-faith doubt about the union's majority status.[7] "Stated another way, an employer that *could* lawfully

---

[2] The NLRB affirmed the ALJ's holding that Grenada committed unfair law practices by prohibiting discussion of Union matters on the floor of the plant, refusing to furnish necessary and relevant information requested by the Union, and improperly making changes to employee benefits, none of which rulings are contested here by Grenada.

[3] *Sara Lee Bakery Grp., Inc. v. NLRB*, 514 F.3d 422, 428 (5th Cir. 2008).

[4] *Id.*

[5] *Sanderson Farms, Inc. v. NLRB*, 335 F.3d 445, 448 (5th Cir. 2003).

[6] *Levitz Furniture Co. of the Pac., Inc.*, 333 NLRB 717, 723 (2001).

[7] *Id.* at 717.

withdraw recognition [because of objective evidence of the union's loss of majority support] *should* be able to lawfully poll its employees, provided it complies with the procedural safeguards articulated [by the NLRB] in *Struksnes*."[8] Like the Supreme Court,[9] we have recognized that polling is an important tool by which an employer may gauge a union's majority support;[10] polls help companies avoid liability for bargaining with a union that does not in fact enjoy majority support.[11]

The procedural safeguards listed by the NLRB in its *Struksnes* opinion require that: (1) The poll be directed to determining the truth of the union's claim of majority support; (2) the purposes for the poll be communicated to the employees; (3) assurances against reprisals be given to the employees; (4) the poll be conducted by secret ballot; and (5) the employer not engage in any unfair labor practices or create a coercive atmosphere.[12] To the five *Struksnes* safeguards we have added a sixth, *viz.*, that the employer must provide reasonable advance notice to the union of the time and place of the poll.[13]

3.  **Analysis**

We decline to address at length the numerous bases given by the ALJ for invalidating Grenada's activities in relation to the Union, and likewise decline to address each of the rulings of the ALJ that the NLRB chose to consider in

---

[8] *Unifirst Corp.*, 346 NLRB 591, 595 (2006).

[9] *See Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 367 (1998).

[10] *NLRB v. A.W. Thompson, Inc.*, 651 F.2d 1141, 1145 (5th Cir. 1981), *overruled on other grounds by Allentown Mack*, 522 U.S. at 364.

[11] *S.M.S. Automotive Products*, 282 NLRB 36, 41 (1986).

[12] *Struksnes Constr. Co.*, 165 NLRB 1062, 1062-63 (1967).

[13] *Tex. Petrochem. Corp. v. NLRB*, 923 F.2d 398, 402-03 (5th Cir. 1991).

affirming the ultimate holdings of the ALJ. Rather, in the interest of brevity, we grant the petition of the NLRB for enforcement of its order after considering but one of the reasons it proffered for affirming the ALJ's invalidation of the poll: Grenada's failure to provide reasonable advance notice to the Union of the time and place of the poll, in violation of *Texas Petrochemicals Corp. v. NLRB.*[14] We do so within the indisputable framework that (1) Grenada is, indeed, the perfectly clear successor to Grenada Manufacturing LLC by virtue of Grenada's acquisition of that bankrupt company's business and assets to conduct essentially the same operations using essentially the same work force to perform essentially the same jobs; (2) as conceded by the NLRB's general counsel, Grenada had a good faith basis for polling its employees to ascertain the extent of their support for the Union; and (3) Grenada had the burden of proving that it complied with the required procedural safeguards for polling, given that polls of union sympathies are presumptively invalid.[15] We conclude that there is substantial evidence in the record to support the conclusion of the ALJ, as affirmed by the NLRB, that Grenada failed to give the Union reasonable advance notice of the poll.

Two weeks after the bankruptcy court approved Grenada's purchase of its predecessor's assets, Grenada polled the employees at the plant. It was not until the afternoon of the previous day, however, that Grenada first notified the Union's representatives, near the end of their shift, that the poll of the employees regarding their support for the Union would commence at 7:00 a.m. the following morning; this, despite the fact that a full week earlier Grenada had

---

[14] *Id.*

[15] *E.g.*, *Wisc. Porcelain Co., Inc.*, 349 NLRB 151, 151-52 (2007); *see Tex. Petrochem. Corp.*, 923 F.2d at 401-02 (describing the duty of the employer to rebut the presumption of majority status by conducting a poll in accordance with the required procedural safeguards).

retained local attorney Tarik Johnson as the person to supervise the poll. We perceive no viable argument in support of Grenada's contention that its notice to the Union was reasonable. Grenada had informed Johnson of the date and time of the poll six days beforehand, yet did not notify the Union until a scant 18 hours before the poll was scheduled to begin. Even then, notice was not furnished until the afternoon on the day preceding the next morning's 7:00 a.m. poll, thereby making it virtually impossible for the Union to seek legal guidance, communicate with the employees, or arrange for the presence of observers or third-party administrators before the poll became a fait accompli.

In defense of its claim of reasonable notice, Grenada first offers that the NLRB has reached contradictory results in other cases about the amount of advance notice needed, so this court should remand for an explanation of which line of precedent controls.[16] As we explain below, the instant case is not inconsistent with the cases cited by Grenada, so remand is unnecessary.

In its further efforts to support its contention that it provided reasonable advance notice of the poll, Grenada cites *Unifirst Corp.*, a case in which the union was given only a few days' advance notice of the poll by mail, but employees were informed of the poll at a company-wide meeting several days before the poll was conducted.[17] In *Boaz Carpet Yarns*, which preceded *Texas Petrochemicals*,[18] the NLRB did hold that one day's notice to a union was

---

[16] *See, e.g.*, *NLRB v. Rolligon Corp.*, 702 F.2d 589, 592 (5th Cir. 1983).

[17] 346 NLRB 591, 606 (2004) (meeting held on August 28; poll conducted on August 31).

[18] It is true, as Grenada points out, that some case law established a requirement of advance notice prior to *Texas Petrochemicals*. *See, e.g.*, *Hutchinson-Hayes Int'l, Inc.*, 264 NLRB 1300, 1308 (1982), *overruled on other grounds by Laidlaw Waste Sys., Inc.*, 307 NLRB 1211 (1992); *NLRB v. A.W. Thompson, Inc.*, 651 F.2d 1141 (5th Cir. 1981), *overruled on other grounds by Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359 (1998). Nevertheless, *Texas Petrochemicals* was our first clear statement that such an independent requirement

sufficient, but there the union had received notice of the employees' dissatisfaction via a petition signed by a majority of employees a full month earlier.[19] Further, the *Boaz* employees received at least three days' advance notice of the poll via a posting in the workplace; here, the notice to employees was not posted until less than twenty-four hours before the commencement of the poll. Finally, the fact that *Texas Petrochemicals* involved absolutely no advance notice is not dispositive. Although no advance notice is obviously not reasonable advance notice, it does not follow that a mere 18 hours notice is reasonable advance notice *per se*.

The policy behind advance notice — allowing a union time to have contact with the employees and to disseminate information — was certainly not furthered by the very short time in which to act that Grenada afforded to the Union. Unavailing is Grenada's contention that, because employees could question Grenada's representative who was conducting the poll (Johnson), the Union did not need time to consult with its members and lawyers. Grenada's logic is obviously flawed: Johnson could provide employees information about the polling process, but not about the merits of union representation or the possibly impermissible manner in which the poll was being conducted. Further, as *Texas Petrochemicals* specifically noted, "[a]dvance notice is particularly

_____

exists.

[19] 280 NLRB 40, 45 (1986). Grenada argues that the Union in this case had advance notice that its support was flagging, a finding supported by the concession that Grenada had a good faith doubt about the majority status of the Union. Therefore, Grenada argues, its poll falls within the *Boaz* exception. Nothing as formal as that which has occurred in *Boaz* (where a petition was presented) occurred here. Further, as noted, *Boaz* predates *Texas Petrochemicals*; and the Grenada employees did not receive the several days' advance notice here that they did in *Boaz*. Even if it remains good law, *Boaz* is inapplicable here. To hold otherwise would eviscerate the advance-notice requirement by equating the belief that an employer must hold before conducting a poll with notice to the Union. Logic does not support such a conclusion, and *Allentown Mack* rejected it.

7

important when a successor employer seeks to poll its employees shortly after taking over the company and contemplates negotiating with the union."[20]

4.    **Conclusion**

We are comfortable in granting the NLRB's petition to enforce its order invalidating the poll for Grenada's failure to satisfy the reasonable-advance-notice requirement expressed in our *Texas Petrochemicals* opinion.[21]  Under the discrete facts of this case (to which this opinion is limited), Grenada's contention that the time and timing of the first and only notice to the Union of the poll — at mid-afternoon of the day before the 7:00 a.m. commencement of voting — was reasonable, rings hollow.  This is particularly so when viewed in the light of Grenada's planning of the event no less than a full week prior to the poll, as evidenced by its retention of Johnson that far in advance as the person to conduct it.  There can be no serious question that the notice was not furnished a reasonable time in advance because, *inter alia*, that timing eliminated any chance that the Union might otherwise have had to contact its members or take steps to ensure that the poll would be conducted in compliance with the requirements of *Struksnes* and in such a manner as not to constitute an unfair labor practice.

We grant the petition of the NLRB to enforce all aspects of its order in this action.

PETITION GRANTED.

---

[20]   *Tex. Petrochem. Corp. v. NLRB*, 923 F.2d 398, 403 (5th Cir. 1991).

[21]   *Id.*

8